# In the United States Court of Federal Claims

No. 20-1815C

(E-filed: March 16, 2021)[1]

| | |
|---|---|
| 22ND CENTURY TECHNOLOGIES, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>        Defendant. | Pre-Award Bid Protest; Motion to Dismiss; RCFC 12(b)(1); Standing; Clarification of Proposals; Motion for Judgment on the Administrative Record; RCFC 52.1. |

Walter Brad English, Huntsville, AL, for plaintiff. Jon D. Levin, Emily J. Chancey, Michael W. Rich, of counsel.

Daniel B. Volk, Senior Trial Counsel, with whom were Brian M. Boynton,[2] Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Andrew J. Baker, Christopher Radcliffe, Department of Justice, Justice Management Division, Washington, DC, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

      Plaintiff filed this pre-award bid protest to challenge its elimination from consideration for the award of a contract with the United States Department of Justice

---

[1]     This opinion was issued under seal on February 18, 2021. See ECF No. 33. The parties were invited to identify any competition-sensitive or otherwise protected information for redaction. The parties' proposed redactions were acceptable to the court. See ECF No. 35 (joint notice regarding proposed redactions). All redactions are indicated by brackets ([ ]).

[2]     Mr. Boynton replaced Jeffrey Bossert Clark as Acting Assistant Attorney General on defendant's reply brief, ECF No. 31.

(DOJ), Justice Management Division, to provide information technology (IT) support services.  See ECF No. 1 at 1-2 (complaint).  Plaintiff filed a motion for judgment on the administrative record (AR), pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), on December 30, 2020, ECF No. 21, and defendant filed its motion to dismiss pursuant to RCFC 12(b)(1), alternative cross-motion for judgment on the AR, and response to plaintiff's motion on January 8, 2021, ECF No. 23.  Plaintiff filed its response to defendant's motion and reply in support of its own motion on January 19, 2021, ECF No. 28, and defendant filed its reply on January 25, 2021, ECF No. 31.

In addition to these motions, the court has reviewed plaintiff's complaint, ECF No. 1, and the AR, ECF No. 20.  This matter is now fully briefed, and ripe for decision.  The court deemed oral argument unnecessary.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, plaintiff's motion for judgment on the AR is **DENIED**, defendant's motion to dismiss is **GRANTED**, and defendant's alternative cross-motion for judgment on the AR is **DENIED** as moot.

I.      Background

       A.      The Solicitation

The DOJ issued request for proposals DJJP-17-RFP-1022 (the RFP) on February 22, 2017, seeking to award several indefinite delivery, indefinite quantity contracts for "the complete systems development lifecycle [ ] of [defendant's] IT systems," including—among other services—"IT Planning, Program Management, Systems Engineering and Development, Infrastructure Support, IT Security, and Operations and Maintenance."  ECF No. 20-1 at 1-2.  The evaluation process was to be conducted in two phases.  Id. at 80.  During phase 1, offerors were to submit proposals addressing:  "1) Corporate Experience, 2) Past Performance, 3) Architectural Attributes Experience, 4) Management, and 5) Price."  Id.  Of these proposals, "the most highly rated" would proceed to phase 2 of the process.  Id.

The offerors' price proposals were to be submitted in a table detailing the offerors' proposed prices for hourly labor and for five contract line item numbers (CLIN) related to other direct costs (ODCs).  See id. at 87, 52-53.  For each of the ODCs, offerors could include a handling charge factor (HCF) to "offset administrative handling costs associated with procuring and managing the ODC."  Id. at 53.  The agency, however, set a ceiling on the allowable HCFs for each line item as follows:

      (a)     Expert Consultants (CLIN X050) HCF is limited to a ceiling of 0.000.
      (b)     IT Hardware and Communications Technology (CLIN X101) HCF is limited to a ceiling of 0.050.
      (c)     IT Software (CLIN X102) HCF is limited to a ceiling of 0.050.

  (d)  Other Equipment and Supplies (CLIN X103) HCF is limited to a ceiling of 0.050.

  (e)  Local and Non-local Travel Expenses IAW the Federal Travel Regulations (CLIN X104) HCF is limited to a ceiling of 0.099.

Id. at 52-53. Offerors were permitted to offer an HCF of less than the ceiling, but for award consideration, offerors must have submitted "HCFs that comply with the requirements" of the RFP. Id. at 95.

  Plaintiff submitted its phase 1 proposal on June 5, 2017. See id. at 1692-1800. In its price proposal, plaintiff included HCFs of [ ]—in excess of the ceiling—for each line item. See id. at 1791; see also ECF No. 1 at 4 (noting that plaintiff "erroneously included its general and administrative ('G&A') rate of [ ], which exceeded the Solicitation's HCF ceilings"). After its review of the received submissions, the DOJ notified plaintiff that its proposal "was not among the most highly-rated . . . in Phase 1, and therefore [would] not be given further contract consideration." ECF No. 20-1 at 1910. The agency informed plaintiff that its rating suffered due to plaintiff's failure to comply "with [the HCF] ceiling limits identified in the RFP." Id. Five other bidders also proposed HCFs in excess of the prescribed ceiling limits and, likewise, were eliminated from further consideration. See id. at 1807 (consensus price evaluation report).

  B.  Plaintiff's Bid Protests

  Plaintiff filed a bid protest at the Government Accountability Office (GAO) on May 14, 2018, alleging that its proposed HCFs were "an obvious—and easily correctable—clerical error," and therefore, should not have led to plaintiff's exclusion from further consideration for award. ECF No. 20-2 at 2-7. Asking the GAO to dismiss plaintiff's protest, defendant submitted an affidavit from the contracting officer asserting that the agency had not engaged in clarifications in phase one of the procurement and did not "intend to engage in discussions in Phase 2." Id. at 147. Plaintiff voluntarily withdrew its protest on June 8, 2018. See id. at 148.

  Defendant then proceeded to its phase 2 evaluation. During this phase of the process, the DOJ did not permit pricing revisions and warned that "any such revision submitted by an offeror shall be removed from the Phase 2 proposal and [should] not be evaluated by the Government." ECF No. 20-1 at 1619. The DOJ, however, received two proposals that "had sample task order pricing issues" that the DOJ noted would be "addressed through clarifications if the offeror [were to be] selected as a candidate for task order award." Id. at 1954 (consensus best value recommendation report – October 9, 2019). In each case, the offeror proposed labor rates that exceeded its contract labor rates. See id.

The DOJ made contract awards, and after a successful protest of those awards, the agency requested clarifications from two awardees related to the certificates required by the RFP.  See ECF No. 20-2 at 206-15 (GAO decision sustaining the protest of MetroStar Systems, Inc.); ECF No. 20-1 at 2013, 2068-69 (emails from the DOJ to offerors requesting clarification).

After receiving the sought clarifications and performing a "limited technical re-evaluation," in June 2020, the DOJ awarded the contract once more to the original awardees as well as to the protestor and to an originally unsuccessful offeror.  ECF No. 20-1 at 2130 (consensus best value recommendation report – revised June 24, 2020).  Three unsuccessful offerors protested the DOJ's award decision at the GAO.  See ECF No. 20-2 at 229-48 (GAO decision in the protest of Qbase, LLC, Perspecta Enterprise Solutions, LLC, and Northrop Grumman Systems Corporation).  The GAO sustained the protest on November 13, 2020.  See id. at 248.

Plaintiff filed its complaint in this court on December 9, 2020, alleging that the DOJ "conducted exchanges with the awardees regarding their Phase 1 proposals" and allowed clarifications from other offerors during the evaluation process, through which plaintiff "could have corrected its error."  ECF No. 1 at 7-8.  According to plaintiff, when the DOJ engaged in exchanges, it should have "sought clarification from any offerors previously excluded from the competition for minor clerical errors, like [plaintiff's]."  Id. at 8.  Plaintiff therefore contends that the DOJ "acted arbitrarily, capriciously and contrary to law when it allowed these offerors to clarify aspects of Phase 1 of their proposals, but failed to allow [plaintiff] to clarify the obvious clerical error in its proposal."  Id.

II.     Legal Standards

Plaintiff bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence.  See Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013).  To determine whether plaintiff has carried this burden, the court must accept "as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).

The Tucker Act grants this court jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).  Thus, to establish jurisdiction, a plaintiff must also demonstrate that it is an "interested party."  The Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009).  Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest."  See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).

If the court determines that it lacks jurisdiction, it must dismiss the case.  See RCFC 12(h)(3).

III.    Analysis

In its motion, defendant argues that this case should be dismissed because plaintiff does not have standing as a result of its failure to propose HCF rates below the RFP ceiling.  See ECF No. 23 at 10-11.  This failure, defendant argues, rendered plaintiff's proposal unacceptable, and, as such, plaintiff "stands no chance of award."  Id. at 22.  Plaintiff responds that it "had a substantial chance of award but for the Agency's action."  ECF No. 28 at 7.

The record is clear that plaintiff was an actual bidder in the subject procurement.  See ECF No. 1 at 4; ECF No. 20-1 at 1692-1800.  Defendant disputes only whether plaintiff has a direct economic interest in the procurement.  See ECF No. 23 at 22; see also Weeks Marine, 575 F.3d at 1359.  To demonstrate sufficient economic interest to support standing, plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citing Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).  To make the appropriate showing, plaintiff must demonstrate "more than a bare possibility of receiving the award."  Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005) (affirming the trial court's determination that the plaintiff had not demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence")).

Defendant argues that because the RFP "made clear that offerors proposing HCF rates in excess of the ceilings would not be considered for award" and because plaintiff's proposed HCF rates topped that ceiling, plaintiff's proposal was unacceptable and stood "no chance of award, let alone the substantial chance necessary to establish Article III standing and interested party status under 28 U.S.C. § 1491(b)(1)."  ECF No. 23 at 15, 22.  Plaintiff responds that:  (1) its proposal was rated as "Very Good," a rating six of the seven awardees also received; (2) its price was "lower than four of the most recent awardees'"; and (3) the error in its proposal "did not relate to a substantive or material

5

provision of the Solicitation" and thus, could have been corrected by a clarification. ECF No. 28 at 7-8. Therefore, plaintiff asserts, it has standing to protest its exclusion. Id. at 8-9.

Pursuant to Federal Acquisition Regulation (FAR) 15.306(a)(2), a procuring agency has the discretion to request that an offeror "clarify certain aspects of proposals (e.g., the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors." 48 C.F.R. § 15.306(a)(2). Clarifications may not introduce new information or alter information contained in the proposal. See ManTech Advanced Sys. Int'l, Inc. v. United States, 141 Fed. Cl. 493, 507 (2019) (citing Level 3 Commc'ns, LLC v. United States, 129 Fed. Cl. 487, 504-05 (2013); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 511 (2013)). A clarification is not appropriate to "'cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal.'" Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 998 (Fed. Cir. 2018) (quoting JWK Int'l Corp. v. United States, 52 Fed. Cl. 650, 661 (2002)). Changes that are required to correct material errors—such as here wherein the identified error is violative of an express provision in the RFP and that provision served a purpose important to the agency's evaluation of the offer—are beyond the scope of clarifications. See ManTech, 141 Fed. Cl. at 506-07 (citing Bus. Integra, Inc. v. United States, 116 Fed. Cl. 328, 333 (2014)). It is well-settled in the caselaw that material errors are "'considered unacceptable'" and cannot be corrected except by discussions. Id. at 506 (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 448 (Fed. Cir. 1996)); id. at 507 (noting that material errors "cannot be waived or fixed without discussions").

Plaintiff asserts that its proposed HCF rates topping the ceiling set in the RFP were "minor and obvious" errors and therefore, subject to clarification. ECF No. 21 at 19. According to plaintiff, "[g]iven the ceiling amounts, it would not have been reasonable for the Agency to conclude that [plaintiff's] stated HCFs were a business decision, or anything other than a mistake." Id. at 20. Defendant responds that the HCF rates were "unquestionably material to the solicitation" because they "affected contract pricing" and the RFP made it clear that proposals above the ceiling "would not be considered for award." ECF No. 23 at 15. Moreover, defendant contends, the agency could not have "unilaterally adjusted [plaintiff's] proposed HCFs to match the ceilings." ECF No. 31 at 3.

In the court's view, plaintiff failed to demonstrate that the provision granting the agency discretion to request clarification applies in this case. A clarification is only appropriate for an error in a price proposal where "'the existence of the mistake and the amount intended by the offeror is clear from the face of the proposal.'" ManTech, 141 Fed. Cl. at 508 (quoting DynCorp Int'l LLC v. United States, 76 Fed. Cl. 528, 545 (2007)); see also ECF No. 21 at 20 (plaintiff arguing that "[a] pricing error is clerical

6

when the government can easily determine the amount intended by the offeror") (citing DynCorp, 76 Fed. Cl. at 545; ManTech, 141 Fed. Cl. at 507).  Here, plaintiff claims that "[g]iven the ceiling amounts, it would not have been reasonable for the Agency to conclude that [plaintiff's] stated HCFs were a business decision, or anything other than a mistake."  ECF No. 21 at 20.  And, plaintiff insists, "[o]nce the government identifies a clerical error, it is required to seek clarification of that error."  Id. at 23 (citing Camden Shipping Corp. v. United States, 89 Fed. Cl. 433, 438 (2009); C.W. Over & Sons, Inc. v. United States, 54 Fed. Cl. 514, 521 (2002); MCS Mgmt., Inc. v. United States, 48 Fed. Cl. 506, 515 (2001); Griffy's Landscape Maint. LLC v. United States, 46 Fed. Cl. 257, 258-60 (2000)).  The problem for plaintiff, however, is that the error at issue here does not fit either the caselaw's or its own definition of a clerical error.

Plaintiff has not pointed to any portion of its proposal or any evidence in the record that would have alerted the agency to plaintiff's mistake or what plaintiff's HCF rates should have been.  See ECF No. 21 at 19-21.  Plaintiff merely offers conclusory statements that the DOJ should have known that plaintiff "should have used as its HCFs[] the stated ceiling rates set out in the Solicitation."  Id. at 21.  As defendant noted, however, offerors were free to propose HCF rates other than the ceiling and many offerors proposed rates below the ceiling.  See ECF No. 23 at 17.  In the court's view, a clarification to permit plaintiff to alter its HCF rates would not have been appropriate because the error was violative of an express provision in the RFP and would have resulted in a material and impermissible alteration to plaintiff's cost proposal.  See Dell Fed. Sys., 906 F.3d at 998.

Because plaintiff's proposal contained a material error that was not subject to correction by clarification, plaintiff cannot "show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."  Info. Tech., 316 F.3d at 1319.  Plaintiff, therefore, does not have standing in this matter, and the court must dismiss plaintiff's complaint for lack of jurisdiction.  See Weeks Marine, 575 F.3d at 1359; see also RCFC 12(h)(3).

IV.   Conclusion

Accordingly, for the foregoing reasons:

(1)   Plaintiff's motion for judgment on the AR, ECF No. 21, is **DENIED**;

(2)   Defendant's motion to dismiss, ECF No. 23, is **GRANTED**, defendant's alternative cross-motion for judgment on the AR, is **DENIED** as moot;

(3)   The clerk's office is directed to **ENTER** final judgment in defendant's favor **DISMISSING** plaintiff's complaint with prejudice; and

7

(4)    On or before **March 12, 2021**, the parties are directed to **CONFER** and **FILE** a **notice** informing the court as to whether any redactions are required before the court makes this opinion publicly available, and if so, attaching an agreed-upon proposed redacted version of the opinion.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge
